We have one case for oral argument this afternoon. Jedidiah Isaac Murphy v. Lorie Davis, etc., et al., hear a verse from Mr. Schaffer. Thank you, Your Honor. May it please the Court, I'm Randy Schaffer. Rick Wetzel and I represent Jedidiah Murphy. I will spend the first half of my presentation discussing the procedural issues, the second half discussing the substantive issues, and I'm going to lead with the punchline. And that is that this Court should grant a COA on whether Martinez and Trevino authorized record development and an evidentiary hearing on a procedurally defaulted IATC, Ineffective Assistance of Trial Counsel, claim. Here is the reason the Court should grant the COA in a nutshell. Our burden is to show that it's debatable that the IATC claim has some merit that would excuse the procedural default under this Court's recent decision in Busby v. Davis. The district court denied us a COA based on its conclusion that we would lose on the merits of the IATC claim. The merits are immaterial to the COA decision. The NBAC Ninth Circuit recently held in Dietrich v. Ryan that in a similar situation, the habeas that has some merit to excuse cause for the procedural default that he need not show prejudice. That is, he need not show he would succeed on the merits of the claim. And most importantly to our discussion, that Martinez and Trevino require record development, including an evidentiary hearing, to establish cause for the procedural default. More importantly, perhaps, the Supreme Court about a month ago heard oral argument in Iestis v. Davis from this circuit. And the issue in Iestis was whether a federal habeas petitioner was entitled to funding to develop a procedurally defaulted IATC claim. The government took the position that, well, why should you give them funding because even if they come up with new evidence to show trial counsel was ineffective, they have no evidence under 2254E2. So the Supreme Court could, doesn't have to, but could decide that threshold decision of whether new evidence would be available despite 2254E2 in light of Martinez and Trevino. The bottom line — But which IATC claim are you talking about? Guilt innocence. Right. I mean, I'm really talking about both. But I'm going to focus — But you have the one about his silence, use of his silence. Silence, opinion on credibility, improper argument that the jury has to acquit on the charge of offense to consider the lessors. I'm focusing on that because that's the one that has the most legs. But for our purposes today, which is do you grant a COA, we have certainly presented debatable issues that would merit a COA in view of the fact that the Ninth Circuit has ruled in our any of the judges expressed opinions during argument, their opinions were that Martinez and Trevino do allow record development of the claim. Most importantly, in a death penalty case, this Court has said time and again that any doubt as to whether to grant a COA must be resolved in the appellant's favor. Now — So if we grant a COA, then the question is, well, did — was habeas counsel ineffective in not raising these ineffective assistance of trial counsel claims? And then do the ineffective assistance of trial claims — I mean, ultimately, you've got to win those, even if you get cause. I would have to do two things. We'd have to have an opportunity to develop the record, whether by depositions or obviously most preferentially a hearing where the trial judge could see the credibility of counsel. I would have to show, number one, state habeas counsel was ineffective in failing to investigate and develop and raise the claim in state court. And number two, that the claim has legs, that there were deficiencies in performance, that there was no sound strategy, and that there's a reasonable probability that the outcome of the trial would have been different but for these errors. I want to take a moment to discuss the state habeas proceeding to demonstrate to the Court the enormity of the ineffectiveness that occurred here. All our claims emanate from the basis that state habeas counsel not just was ineffective but worked against his client, and that that has consequences under Martinez and Trevino. Do you also need to rely on the ineffectiveness of state habeas counsel under Martinez-Trevino to get to your Brady and Giglio claims? Yes. Right. Because the state courts had abuse of the writ. These weren't raised on state habeas, and they're procedurally barred unless you can show cause, and your cause is ineffective assistance of habeas counsel, Martinez. Frankly, I'm much less concerned about those. Because? I just think if we're going to win, we're going to win on ITC counsel. Okay. Well, and no, has any court ever said, I think you do have that Ninth Circuit opinion, but ever said Martinez applies to an underlying claim of Brady? You have that problem. So, we got much bigger hurdles to jump on that. Robert Abbott filed an untimely state habeas application raising non-cognizable claims. Four concerned board IRR that could have been raised on appeal that weren't, and he didn't even back it up with an ineffective assistance of appellate counsel claim, which would have been the proper way to get that issue before the Court. He took the appellate brief filed by another lawyer, copied those 19 claims, filed them verbatim. Of course, you can't raise an issue on habeas that has been raised and rejected on appeal. The state filed an answer appropriately pointing out that all the claims were procedurally defaulted. The case lay dormant for five years. During that five-year period of time, the Court of Criminal Appeals essentially disbarred Abbott from representation in habeas cases because he failed to file a timely application in a death penalty case. They kicked him off the roles of lawyers qualified to handle the cases. They appointed a new lawyer and gave him 270 days to file a proper application. They did not give Murphy notice that Abbott had been removed as qualified habeas counsel and allowed Abbott to continue to represent Murphy after he was no longer, for their purposes, a lawyer. Mr. Wetzel and I were hired in 2008 to evaluate the case. We quickly determined the application was untimely and subject to dismissal and clearly would be dismissed had the CCA followed its own case law. And additionally, even if they considered the claims, there was not a single claim that stated even a ground for relief. So we persuaded the Dallas District Attorney's Office to join us in a motion to substitute counsel conditioned on a 270-day extension to file a proper application. Well, I'm telling you, we kicked a hornet's nest when we did that because the first thing the trial judge did after this case had laid dormant for five years is he pulled the file, he took the state's findings they'd filed five years before, he signed them saying procedurally defaulted, no merit, sent it up to the CCA. So we figured, okay, the CCA will fix this. They've been given the opportunity and the state agrees. The CCA orders Abbott to file an affidavit explaining, why didn't you file this application on time? Well, that doesn't bode well for us because if they followed their law, they'd have done the same thing they did in the Ward case. They'd have removed him, they'd have allowed new counsel to come in, they'd have given his time to file a proper application. They ask him for an explanation. So he gives one. He says, I made an honest mistake. And if he'd quit there, he'd have quit while he was ahead and his client was ahead. But instead, he went a little bit further and he said, I don't understand why the state is agreeing to do a do-over. Murphy is using the system to delay his execution. If you allow him to do it, you're going to open the door for all these death row inmates to do it. You should rule on the application I filed even though it doesn't state a basis for relief and oh, by the way, I want to get paid. That was his response. The only work he did on this case was to advocate for his own client's execution. And if you want to do some interesting reading, I commend to you to read his affidavit cover to cover. It's seven or eight pages. You'll read it the first time and you'll say, did I really just read that? And you'll read it a second time. And then you'll write a note in the margin and it'll say, whose side is he on? That's the representation that Murphy got in state court. So here's what the CCA does. They find no good cause for the untimely application. And under their case law, their duty is to dismiss and appoint new counsel for a do-over. But instead, they say, well, you know what, everybody in the trial court treated this like it was a timely application, so we're going to treat it like it was timely too. Denied. The state joined us in a suggestion for reconsideration. Denied. We filed the federal writ, stayed and abated, returned to state court, filed the same claims we have now in state court. It has to go to the CCA. Of course, they quickly dismissed the IATC claims. They remanded the misconduct claim for a hearing, and once that hearing was had, they dismissed that one as well without addressing the merits. So we come back to federal court and ask for an evidentiary hearing to develop the procedurally defaulted IATC claims. Now, we're asking for this two or three years before Martinez and Trevino are decided. So we're sort of ahead of the curve in terms of where we think the law is going on this. And obviously, we don't get a hearing. Here's what's important. A capitally death-sentenced prisoner has never had a de novo merits review of any legitimate habeas claim in state or federal court because his habeas lawyer, as he testified, was burned out and didn't care because the CCA refused to fix this when they had the opportunity and the state agreed. And here we are. So I think we have unequivocally established ineffective assistance of state habeas counsel. I want to take just a moment to give you all the arc of the development of the law in the procedural issues that will inform your decision because they're interesting and they're important. And I believe the district court and my eminent colleague here has perhaps taken them out of context. So if you will, give me just a second to lay this out. 28 U.S.C. 2254E2, which sets the rules for this type of proceeding, says if the petitioner failed to develop the factual basis for a claim in state court, there's no federal evidentiary hearing unless, and then it gives three exceptions, none of which really apply here. So if you just read 2254E2 by itself, you'd say, you got nothing. And prior to Martinez and Torino, that probably would have been the correct answer. This court in McDonald in 1998 said the district court can deny an evidentiary hearing where it can decide the case based on affidavits that in that case had been filed in state court. Williams v. Taylor, which is the case the district court and respondent ride to the finish line, Supreme Court 2000, said no federal evidentiary hearing is required where the defendant failed to develop the factual basis for the claim in state court. Now, that case was decided at a time when the ineffective assistance of state habeas counsel did not excuse a procedural default. It was of no consequence, the theory being you don't have a right to counsel on habeas, therefore, you don't have a right to effective counsel. Schriero v. Landrigan, Supreme Court 2007, no federal evidentiary hearing required where the state court record refutes the factual allegations. Obviously, no application to our case. Cullen v. Penholster, Supreme Court 11, federal habeas review is limited to the record before the state court that adjudicated the claim on the merits, and that is the key language, adjudicated the claim on the merits. It applies to an IATC claim that was adjudicated on the merits in state court, not to a claim that was procedurally defaulted. Martinez in 12, Trevino in 13, for the first time, a little bit of daylight for a guy in Murphy's position. An IATC, I'm sorry, an IAC of state habeas counsel can excuse a procedural default and allow the federal court to consider de novo an IATC claim, just like the state court could have done where it's properly raised in state court. So that brings us to Dietrich v. Ryan, the most, I know it's from the Ninth Circuit and I know their track record, but, but, it's the most reasoned opinion on the subject. It was in bunk, and the Supreme Court declined review, so you would have to say, at least on its face, that's strong support for what it says, and what it says is the district court should allow discovery and an evidentiary hearing to determine if there was cause for the procedural default, and if it's excused, were there the – whether there was ineffective assistance of trial counsel. And the defendant must be allowed to introduce any new evidence to develop the claim. And they correctly reasoned that if pinholster applies in this situation, then Martinez is in – is dead letter. It means nothing. And they say – But if you assume – let's say you can assume there's cause to excuse the default because of everything you said about how awful habeas counsel was, why can't the court then look at whether there's anything debatable as to the underlying ineffective assistance claim? Well, they can, but they have to look at it correctly. And you're saying there's no record developed on it. Correct. And so what – what Dietrich said is that there is an exception to 2254e2 because what we're doing here is we're not making a claim for relief. We're seeking an equitable ruling to excuse a procedural default. So that's how they distinguish it. I think the – Didn't the state trial court – I know the court of criminal appeals just relied on abuse of the writ. I thought there were findings in the state trial court. None. Because the – we never got to raise the IATC claim in state court. They dismissed it. There were findings on the Brady. The Brady, on the Brady. Not the IATC. So let's get to the merits because, obviously, that is of some consequence here. Can we show that there – that this claim has some merit? The district court's merits decision is debatable because it presumed that trial counsel was effective and the conduct was strategic in the absence of an evidentiary hearing or record development. The district court held that Martinez and Trevino only allows merits review of a procedurally defaulted IATC claim but that any development of the claim would not be permissible under Williams v. Taylor. And that's just a flat straight misreading – not a misreading of Williams v. Taylor but it's not considering Williams in light of Martinez and Trevino because Williams applies to a raised and rejected IATC claim, not to a defaulted one. And if that decision by the district court is correct, and here's why this issue is potentially cert-worthy, if you all uphold that decision, not only are you creating a conflict with the Ninth Circuit, but you're telling the Supreme Court, hey, Martinez and Trevino gives you no meaningful remedy because you may get the district court reviewing the claim, but he's going to presume trial counsel was effective, he's going to presume there were sound strategic reasons for the acts and omissions, and he's not going to give the defendant a chance to rebut it. So guess what? On a silent record, you lose, just like every defendant lost on a direct appeal where they didn't have a chance to develop the record, which is why Martinez and Trevino came about in the first place. So here's what we need to do here. We have to analyze two things. Number one, what was the defense theory at trial? And number two, how did the errors of counsel adversely affect that theory? The defense theory was very simple. It was that Murphy is guilty of murder instead of capital murder because he didn't have the specific intent to kill the deceased, that the gun discharged accidentally as he was transferring it from one hand to another, and indeed, the prosecutor argued during summation, the only disputed issue in this case is what was the defendant's intent at the time the gun discharged. The determination of capital murder or murder depended on the jury's assessment of the Murphy's confession. Which is belied by the fact that he didn't, you know, an accidental discharge, he doesn't call anyone. He goes and he hides the body. He also drives around with his friends, uses her ATM card. It's a pretty incredible theory to say it was an accidental shooting in light of what happened after the shooting. It definitely shows he's a bad guy, there's no question about that, but the gun could have discharged accidentally and he still acted like a fool afterwards, and that doesn't mean it didn't discharge accidentally, it doesn't mean he's not guilty, it means he's guilty of murder and he gets life for murder instead of death for capital murder, but it's a plausible theory and it's evidentiary based, and it's the only evidence in the case as to how the gun actually discharged was a statement in his confession. The errors by defense counsel in this case went to the heart of that theory, and there were three of them. First is post-arrest silence, and the back story is Murphy gives a confession after he's shot. The state introduces evidence that a week later the detective tries to question him further, advises him of his rights, he refuses to talk. That's clear post-arrest silence, that's not admissible under Supreme Court case law, there's not any question about that. The district court says that this evidence was proper, or the counsel's failure to object could be justified because it showed that the confession was voluntary as the detective respected Murphy's rights when he invoked him on a subsequent occasion. That's just not record-based. Murphy did not contend before the jury that the confession was involuntary, indeed he relied on that confession to support his position that he was guilty of murder instead of capital murder, that he did not have the... Wasn't the defense trying to show he was cooperating with law enforcement? And then it would be allowed as a rebuttal to that. Well, no. First of all, they may have been showing he was trying to cooperate, but there's no evidence in this record that that's why the lawyer didn't object to the evidence of post-arrest silence. That's just something that's concocted by the state and the judge as a possible reason for not objecting. Nobody has said that's why we didn't object. Secondly, that's a punishment issue. But that would make it futile if, in fact, they'd opened the door to his level of cooperation. That would make it an admissible rebuttal to that. No, not at all. I mean... All right, well, you can disagree. That's what the case law says. You can disagree. No, but clearly, you know, they introduced his confession in evidence. His confession by itself shows he cooperated with the police. This is showing he didn't cooperate on a subsequent occasion. It's offered by the state to dispute the confession, to say, if he really, you know, if he hadn't, like he said in his confession, why did he refuse to talk to the police later on? The reason that we need to have an evidentiary hearing on this matter is to develop, did counsel have a strategy of not objecting, or did counsel just miss it, just flat missed it? You can't make up an explanation like they do in their brief that said, well... So that's what I'm getting at. Well, I don't think it would have been a futile objection. I understand that, but... The state introduced the confession. They can't then introduce evidence of post-arrest silence to rebut the confession that they introduced, nor does post-arrest silence in that scenario really rebut what he said a week earlier. Secondly, the opening the door to police opinion testimony that the confession was not credible, where he confesses on day one, they drive him around a couple times over the next week to try and figure out the locations of the abduction and the murder. He says, I don't know, can't find it, can't find it. And the defense lawyer asked the detective, did you believe he was telling you the truth at that time? And the detective said, yeah. And then, of course, in rebuttal or redirect, the prosecutor brings out, well, did your opinion change over time? Yes, it did. How did it change? Well, you know, I decided he wasn't telling the truth because he refused to answer some questions and parts of his confession were false. Just a flat-out opinion, I didn't believe his confession. The district court said that sounds strategy to show he's remorseful and cooperative. Now, we don't know that that was counsel's strategy at all. They might get up there at a hearing and say, you know, we never even considered the fact that asking this question would open the door to evidence we really didn't want in. It just happened. We didn't intend to do it. It wasn't strategic at all. You can't just assume it was strategic and make up a strategy for them. Secondly, remorse and cooperation are punishment issues, not guilt-innocence issues. The guilt-innocence issue is how did the gun discharge? And they did put on evidence of cooperation and remorse at the punishment stage. Third, it can never be sound strategy to elicit a detective's opinion that the defendant told the truth at time B. If his ultimate opinion is that the defendant lied at time A, and time A is what counts. I want to address the lesser-included offense because I think this is the worst error of them all. The prosecutor argued that the jury could consider the lesser-included offenses of murder and manslaughter only if the state did not prove capital murder beyond a reasonable doubt. It's what you call an acquittal-first argument. The charge was silent on this matter and certainly did not say that. The argument misstated Texas law, which did not then, does not now, and has never required a jury to acquit of the charge defense before considering the lesser-included. Isn't that exactly what he said, that you have to acquit him first? I think what he said is you can consider the lesser-included offenses only if the state didn't prove capital murder beyond a reasonable doubt, which is the functional equivalent of you have to acquit him of capital murder to consider the lesser. It's just saying it in the negative instead of in the affirmative. The magistrate, the district court said that a case called Boyette supports this argument. Boyette does not support it. Boyette had a charge essentially the same as the charge in our case, and the defense was arguing as fundamental error on appeal that that charge, you know, was improper and the jury finding the acquit first, and the Court of Criminal Appeals held that the jury understood it could consider the lesser-included offenses despite that charge as demonstrated by the fact it convicted the defendant of manslaughter. And in quotes they said, this instruction properly informed the jurors to consider the defendant's requested instructions on lesser-included offenses. So Boyette does not support that an acquittal-first argument is proper. The Court of Criminal Appeals acknowledged our interpretation of Boyette in a case called Barrios, where the charge instructed the jury to acquit the defendant of capital murder before it could consider the lesser. There was an objection. That was after this trial. That was after the trial. The objection was overruled. It went up on appeal that an acquittal-first charge was improper. And the Court of Criminal Appeals said that the charge as a whole did not require the jury to acquit of the capital murder before it considered the lesser, and it cited Boyette as authority. Do you have any case where a prosecutor's comments were held to be reversible error in this context, as opposed to a jury instruction? I mean, the jury instruction is the implementer of the court. Yes. They're the ones I cited in the brief. And there was a couple, Drinkard, which was my case from the early 90s, and Andrews, which is a direct appeal case where they found ineffective assistance despite the absence of an evidentiary hearing where the arguments were contrary to the charge and misled the jurors to the applicable law. We'll visit a little later about this after my colleague gives you his view of the subject. Thank you. Thank you, sir. Mr. Dahamacourt. May it please the Court. Regional jurors would not debate that Murphy's two claims are procedurally barred and alternatively meritless. First, the fact that Murphy fails to allege even a facially validated claim is fatal both to his attempts to avoid the procedural bar to this claim.  Sorry, Your Honor. Don't talk quite so fast. Sorry, Your Honor. Because your mother probably told you. Second, Murphy's IITC claims merely fault counsel for failing to raise frivolous objections and for making reasonable strategic choices. In addition, Murphy entirely failed to sow prejudice either at guilt, innocence, or punishment because there was overwhelming evidence that Murphy was guilty and that Murphy was a future danger. Therefore, it is not debatable that he fails to satisfy the Martinez standard. And I will turn first to the IITC claims because that's what my colleague focused on. Judge Costa, I think you appropriately focused on prejudice and asked questions about prejudice at guilt, innocence. In this case, there was overwhelming evidence that Murphy committed this crime. He confessed to the crime. There's also overwhelming evidence that he intended to commit the crime. This was the medical examiners, both for Murphy and the state, testified this was a loose contact wound, meaning that the gun was actually placed to Bernie Cunningham's head when Murphy pulled the trigger. So that doesn't indicate that this was an accidental shooting. Second, Judge Costa, as you also pointed out, the evidence of what Murphy did after he shot Bernie Cunningham shows that this was an intentional murder. Murphy drove around with Cunningham's credit cards, bought his friend's liquor, bought himself liquor, bought his friend's motorized scooters. And her body was in the trunk at the time or he'd already dumped her in the creek? What was the timing of that? Her body was in the trunk at the time. He went immediately to try and use her ATM card while Ms. Cunningham was likely still alive in the trunk. And that's what the testimony showed. She said that she didn't die immediately, that she was actually struggling to survive while Murphy was driving around using her credit card. So the evidence here is overwhelming that Murphy intended to commit the crime, and that was the only issue, as my colleague explained, that was presented to the jury on guilt and innocence. And none of these claims, which would cause a jury a reasonable probability of a different outcome of a jury acquitting him of capital murder. Regarding the specific claims, I'll start with the claim that the trial counsel failed to object to the prosecutor's statement about the jury charge. The law that was in place at the time of this trial in 2001 was Boyette v. State, and in that case, the CCA actually suggested that a charge should inform the jury to acquit the defendant of capital of the greater offense before moving to the lesser-included offense. And that's exactly what the district court explained, and that's what Boyette holds. In 2009, the Berrios case came out, and it disapproved of the use of the word acquit. And that's all it disapproved of, and it actually didn't find that it was harmful error. It didn't even find that it was error. It just said that it was inartful to use the word acquit. And then it actually suggested that jury charges use the word, use reasonable doubt, or if the jurors can't agree, they move to the lesser-included offense. So counsel was, or the prosecutor was, in compliance with Texas law when he made this argument. And in fact, his argument matched the jury charge exactly. The jury charge said that if you're unable to find Murphy guilty beyond a reasonable doubt, then you move on to consider the lesser-included offenses. So it's certainly not deficient performance for trial counsel not to object to this argument. Second, I'll move to the failing to object to the indication of the right to silence. I think that my colleague has kind of minimized what the record shows here. The record is very clear that one of the issues at Guilt Innocence during trial was whether or not Murphy's confession was voluntary, both whether his oral statements were voluntary  In order to prove this, defense counsel went through Murphy's different confessions, or the different times when he spoke with police, the different times he waived his Miranda rights, attempting to suggest that the detectives were not respecting his right to an attorney and they were not respecting his Miranda rights, and that he was not understanding his Miranda rights when he got to them. In this case, it's important to note that there's kind of a timeline here. October 6th was when Murphy wrote his written confession, and that's where the first Miranda warnings come in, when he was first warned. He was then issued Miranda warnings again, and this is what defense counsel went through with him, trying to show that his confession was involuntary, trying to show that the prosecutor was not respecting his Miranda rights. And then on October 13th, that's when Murphy refused to sign the Miranda warnings and stopped talking, basically. When the prosecutor elicited this testimony, he was simply responding to defense counsel's arguments, and it's important here that the prosecutor was focusing on the detective's reaction. He did nothing to indicate that this was any suggestion of Murphy's guilt. In fact, most of the cases that deal with this indication of the right to silence, the failure to object to it, or that the prosecutor has erred by mentioning the indication of the right to silence. The defendant has given an excuse for the crime at a later date, but he didn't give that excuse at the time when he invoked his right to silence. In this case, Murphy's excuse, his lack of intent argument, was part of his confession. So there's simply no way there could be harm here, because there's nothing here to show that the prosecution was trying to suggest he was guilty because he invoked his right to silence. In fact, I think it's pretty clear that given how innocuous this testimony was, that had counsel actually objected, it likely would have given the jury a greater suggestion that this was significant testimony, because the prosecutor did absolutely nothing to use this testimony to show that Murphy was guilty. And then I'll move to his final ITC claim, the opening door to police opinion testimony. Initially, defense counsel elicited testimony, as you said, Judge Costa, to show that Murphy was cooperating with police. There was also an issue of venue here, and defense counsel was trying to show that although Murphy was telling the truth to the detectives, the detectives couldn't find the location of the abduction and the murder. So it was helpful for defense counsel to elicit testimony showing that Murphy was telling the truth. And in fact, it was successful, that question was successful. Detective Myers testified that Murphy was telling the truth. So I think that it's clear that that was a reasonable strategic decision, and there certainly was no prejudice here. There's certainly, you know, the fact that Murphy may have been telling the truth some and not telling the truth at other times does not show that he did not intentionally commit the crime. What about his argument that we don't know if it's strategic or not because there's been no hearing and no explanation by defense counsel for why he did what he did? Strickland requires a presumption that counsel's strategy was sound, and the district court properly applied that presumption. And in this case where all the claims are record-based, I think it was clearly appropriate to apply the presumption. In this case where I think trial counsel's strategy is clear from the record, it's appropriate to apply that presumption. It's also clear from the record that there is no prejudice here, so there's no need for development along those lines. On the procedural default, what about his argument invoking the Ninth Circuit case that if there's a debatable claim that habeas counsel was ineffective, then we have to grant the COA and allow basically for record development? Your Honor, this Court's been very clear that if, and Martinez is very clear, that if the petitioner fails to allege a substantial claim, if the petitioner's claim has no merit, that no evidence or hearing is required, and that's what the district court found. It's also found that Substantial merit on the habeas counsel or on the underlying? On the underlying. On the underlying trial counsel. This Court has also explicitly held that state habeas counsel cannot be ineffective for failing to raise a meritless claim. And in this case, the district court explained that while state habeas counsel may have had its deficiencies here, that he cannot be ineffective because these claims lack any merit. And that claim is, and that is not debatable. And that's why COA should not issue here, either on these IATC claims at guilt-innocence or on the procedural bar issue or on the evidentiary hearing issue because the record here is sufficient to show that the claims have no merit, both for deficient performance and prejudice. Looking at the Brady claims, all about the certainty of this identification, what analysis are you recommending there? There was an abuse of the writ because it wasn't raised, either inquired about either by trial counsel or habeas counsel, right? So what bar would you say applies there? It's a regularly applied procedural bar. It's 11071 Section 5. The state court found that it should have been previously raised in the initial state habeas application, and that's a regularly applied bar. And in order to overcome that bar, he must show cause and prejudice through the bank standard. Or he's trying to say Trevino should apply to Brady. But that claim, that's foreclosed. In this circuit, and I think the recent Supreme Court case, the VILA forecloses that, Martinez only applies narrowly to IATC claims, and that's clear in this circuit and in the Supreme Court. The Supreme Court has recently confirmed that. In addition, I think it's important to note that even if Martinez did apply to Brady claims, that he would still have to show a valid underlying Brady claim in order to get through the procedural bar. And here there just simply is no valid Brady claim. These are Brady claims where there were witnesses from trial who were essentially re-cross-examined eight years later, and they made substantially similar statements. All of the information was available to trial counsel during the trial, during their cross-examination. None of it was material, none of it was suppressed by the state. These are all simply paraphrases of what these two witnesses remember from the identification, and none of it was suppressed. What about the prosecutor going to the house, and there's a debate about what he was referring to but confirming when she said, did I get the right guy? It's clear from the record, and the state habeas court found, that he did not confirm that she got the right guy. It's very clear, both witnesses testified at the state habeas hearing, that he simply stated that she had confirmed the person that he's prosecuting. He did not say that she had identified the right person. Additionally... But he testified he didn't, the prosecutor said he didn't say anything, he doesn't remember it at all, not that he would have said you got the same guy, it's the same guy we're prosecuting. The prosecutor did testify that he said, that he believes that's what he said, from his recollection that's what he said. He said that he would never confirm that she had actually identified the correct person. But the prosecutor did say that, I don't think, the prosecutor didn't remember the use of the word right guy, and it turned, and Wilhelm actually never used that word until it was suggested by counsel. But there's no indication here that there was a confirmation. In addition, there couldn't be, it couldn't be material because it happened after the identification, and it's simply cumulative of her actual identification, and Detective Stanton's testimony about that identification. In addition, it's something that could have been asked. Would you mind slowing down just a little bit? Sorry, Your Honor. I'm having a hard time keeping up with you. I was just making the point that it's also not material because Wilhelm had already made the identification before she spoke with Reg Davis, and it's also something that could have been asked to Wilhelm during, during her testimony, but was not asked. And I'll move just briefly to the IATC at punishment claims. Counsel developed a strong strategy, mitigation strategy at punishment, defense counsel. They used evidence in the record to show that, that Murphy had had a very troubled childhood, that he'd been abused, that he was an alcoholic and depressed. Counsel also presented an alibi defense to the Wilhelm kidnapping, and presented multiple experts to testify that, that he, that Murphy was affected by his childhood, and to present a very sympathetic picture of Murphy for their mitigation argument. However, what's clear here is that there was overwhelming evidence of Murphy's future dangerousness. I think that Murphy, in his briefing, has kind of tried to downplay the fact that there was no other evidence, there was no other extraneous defense evidence that was presented other than this one kidnapping. That's simply not the case. First of all, both defense trial counsels testified at the state habeas hearing that the primary offense was easily enough to get him capital murder, to get a future dangerousness finding in Texas. Second, there were multiple extraneous offenses that were presented where Murphy had a weapon, where he had a deadly weapon, and where he committed violence against women. There was an assault against his ex-girlfriend, in which he bloodied her nose, and he was wielding a knife when the police showed up. There was a situation with a co-worker, a female co-worker, where he threatened to knock her head off, and threatened to blow her away. And there was another incident where he held a gun to a young woman's head and asked her if she was afraid to die. And I think this evidence, both when you look at Brady materiality, and when you look at prejudice at punishment, is a strong indication that this Wilhelm kidnapping was not actually what got the death penalty here, and would not have, and had there been some more impeachment evidence, or more alibi evidence that was presented, that would not have saved Murphy from the death penalty. There's still a reasonable probability that the outcome would have been the same. Well, the alibi evidence about the driving time actually would have shown he could have done the Arlington, Texas to Wichita Falls and back to work. That's correct, Your Honor. And defense counsel put on a strong alibi defense. They put on a strong defense that this would have been a difficult crime for him to commit, but not impossible, because the evidence showed it was not impossible. 173 miles, I think, in three hours and 24 minutes is surely not impossible. And I don't think it would have been an effective strategy to tell the jury that. Instead, they concentrated on the identification. They concentrated on attempting to put the diary of his girlfriend on to show that he was always at home during the day, during those periods of times. And they focused on the fact that his description did not match the description of the person who committed the crime in Wichita Falls. And that was a sound trial strategy. In addition, Dr. Crowder's testimony, again, they put on strong mitigation evidence through Dr. Crowder. They put on evidence that, again, Murphy had been abused. He had a difficult childhood. And, in fact, Dr. Crowder testified that he would not be a future danger in prison and that he had a low likelihood of escaping from prison. And so that was really strong future dangerousness evidence. Now, they couldn't avoid having Dr. Crowder admit, given Murphy's violent history and the nature of this horrific crime, that he wouldn't be concerned about him on the outside. But I don't think Murphy can't show that it would be possible to call an expert that wouldn't agree to that. And this was certainly a reasonable trial strategy to call Dr. Crowder to deliver effective mitigation evidence. If the court has no further questions. About the fact that these tests were not administered by the people who confected the tests, did that really not amount to much? Or what's your take on that? I mean, you know, the creators of the tests were the ones who the state urged had done the tests. And they hadn't. You know, they were done. They were the people who created them. Was this not a big deal or what? I mean, I don't know. What's your take on that? Well, all of the relevant evidence and all of the evidence explaining these tests was before the jury. This was a witness that was called by the defense, again, to show that Murphy had a difficult childhood, that he blamed himself for things, to present very sympathetic evidence. And during that case, Dr. Connell explained that these were computer-scored tests. She explained that they were hypotheses about potential likelihood for certain behavior. And she clearly put the relevant qualifying information before the jury. Now, when the prosecutor suggested that this was, you know, that it was actually the doctors who created the tests that had evaluated the test scores, not evaluated Murphy, but evaluated the test scores, the jury had already heard what these tests were. And, in fact, the tests were admitted in the record. So they were available to the jury. In addition, there would be no prejudice from the fact that simply the doctors evaluated the tests versus a computer-score evaluated test, especially since these were explained as hypotheses. So there's really functionally no difference between the doctor evaluating a multiple-choice test and a computer evaluating a multiple-choice test. So, ultimately, there was not ineffective assistance of trial counsel for failing to object to this. And, in fact, had counsel objected, it likely would have indicated to the jury that they were trying to minimize the tests, when, in fact, these tests were presented by defense counsel. So I think that especially because the relevant qualifying information was before the jury, that this was not ineffective assistance of trial counsel. It's not a substantial claim of ineffective assistance. And if the Court has no further questions, because both the application of the procedural bar to both of these claims and the merits of these claims are not debatable, the Director respectfully requests that this Court deny COA. Thank you. Yes, sir. May it please the Court. I respectfully suggest my colleague falls into the same trap here that the District Court fell into, and that is he's arguing the merits of the IATC claim. And he's basically saying this is not a winning claim. The issue before the Court is, are the merits of the COA. His argument did not say this is not an arguable claim. And all we're deciding now is, is this an arguable claim? I'm not suggesting the evidence is not legally sufficient to uphold the conviction. Indeed, there's no challenge to sufficiency. I'm not suggesting Mr. Murphy's not criminally responsible. Indeed, he is. The only difference is whether he should be executed or sentenced to life imprisonment. His argument is basically that the jury wouldn't have acquitted Murphy of capital murder even had the lawyers not made these mistakes. And my point is, that is subject to debate. And you remember me for a moment, if you will. Let's assume. Let me ask. You said there has to be a hearing on counsel's strategy and tactics. Do you think there has to be a hearing on the prejudice analysis? Because we can look at the record and see all the evidence that was for and against. Prejudice is a legal conclusion. Deficient performance is law applied to facts. Let's assume the hearing goes like this. Let's assume you remand for a hearing. Let's assume that trial counsel takes the stand. And let's assume that trial counsel tells the truth without trying to manufacture some strategic reason for the complaint of omissions. And let's assume this is her testimony. I knew from reading the offense report that there was evidence of post-arrest silence a week later. And Murphy had been advised of his rights, refused to talk. I never considered filing a motion in limine. In retrospect, I should have filed a motion in limine had it been sustained. That evidence never would have come in had it been overruled. I should have objected and preserved the issue for appeal if I had to do it tomorrow. I would have done that. Filed a motion in limine on post-arrest silence, objected to perfect the record. As far as the detective's opinion is concerned, it never occurred to me when I elicited the opinion that Murphy, he thought Murphy was telling the truth at time B, that the state would come back and deliver the money shot, and that is that the detective didn't believe Murphy was telling the truth at time A, and time A is what counted. That never occurred to me. It wasn't strategic on my part. If it was, it wasn't well thought out. I would not do that again. And number three, I thought Texas law was that the jury did have to acquit of the charged offense before considering the lessors. If I thought it was otherwise, I would have objected the prosecutor's argument or I would have stood up in my argument and corrected him and said, he's wrong, you don't have to acquit first, this charge doesn't say that. That was not strategic on my part. If Texas law doesn't permit that type of argument, I was in error. It wasn't strategic. If she took the stand and testified to those three things, the undercutting of the district court's opinion would be gone. There would be no sound strategy. She would have basically confessed, if you will, to deficient performance, and then it would be a legal question of prejudice. So I'm saying I'm entitled to that opportunity to try and make her tell the truth, and if she bows up and rears back at me and claims she has strategy, I'm entitled to cross-examine her on it. What would get you that hearing? I mean, granting a COA just means then we'd have to consider the merits here. That just gets you. You want a granting of a COA and a remand for the lack of a hearing. My thought is the COA is to send it back to the district court for record development under Martinez and Trevino of a procedurally defaulted claim. That's all I'm asking. Look, we're big boys. You give us a chance and we fall short, and you all say he needs to be executed. Well, I guess that's just the way it is. But I want this guy to have one fair shot, and he's not going to get it in state court. So if you all don't give it to him, he's not going to get it at all. I want one fair shot to convince an honest trier of fact that there was no sound strategic reason for what occurred here, that the lawyers flat out made mistakes, and that there's a reasonable probability that it impacted the judgment of whether it was capital murder or murder. You give us that opportunity. We fail to meet it. You call us out. On prejudice, what about the testimony he talked about how the wounds, the forensic examination of the wounds? That's all subject to argument. I mean, there is no forensic testimony that can determine whether a gun accidentally discharged based on the location of a bullet wound because you don't know for sure the position of the gun, the position of the shooter's arm, the position of the body at the time. But was it impeached at trial? I mean, there was no expert to offer a different opinion. I don't recall anything like that. But at the end of the day, all we want is one fair hearing with de novo merits review by a court of conscience. I don't think that's too much to ask in a death penalty case. Thank you.